O

# United States District Court
# Central District of California

| | |
|---|---|
| EBBY BAKHTIAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC; SANTA MONICA CHRYSLER JEEP DODGE AND RAM; and MOPAR MOTORS,<br><br>Defendants. | Case № 2:20-cv-06522-ODW (JEMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FCA US LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [53]** |

## I. INTRODUCTION

Plaintiff Ebby Bakhtiar filed this putative class action in the Superior Court of California, County of Los Angeles against Defendants FCA US, LLC; Santa Monica Chrysler Jeep Dodge and Ram ("SaMo Chrysler"); and Mopar Motors. Defendants removed the case to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). (Notice of Removal, ECF No. 1.) FCA, the only remaining Defendant, now moves to dismiss all claims asserted against it in Bakhtiar's Third Amended Complaint ("TAC"). (Mot. Dismiss TAC ("Mot."), ECF No. 53.) The

Motion is fully briefed. (*Id.*; Opp'n, ECF No. 54; Reply, ECF No. 55.) For the following reasons, FCA's Motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

On May 21, 2015, Bakhtiar purchased a 2015 Dodge Viper from a nonparty dealership. (TAC ¶ 7.) FCA is the manufacturer of the Dodge Viper. (TAC ¶ 2.) On June 28, 2017, before his original warranty lapsed, Bakhtiar purchased a vehicle warranty extension plan from FCA called the Mopar Vehicle Protection Plan (the "Plan") for $2,600. (TAC ¶¶ 8–9; *Id.* Ex. A ("Plan"), ECF No. 52-1.) "FCA marketed the . . . Plan as an extension of the manufacturer's warranty and another way for Viper owners to essentially receive wrap around protection of their vehicle." (TAC ¶ 8.) Under the Plan, FCA agreed to "pay the total costs (parts and labor) less a deductible per visit, to correct [certain] mechanical failures" that might arise with Bakhtiar's vehicle. (Plan 2.[3]) This case centers around the following Plan provision:

> **OBTAINING PLAN SERVICE**: To obtain service under this Plan, you should return and present this contract to the Dealer who sold you the Plan. In the event you cannot return the Vehicle to the selling Dealer for service, you may request service from any Dealer within the United States, Canada, Guam, Puerto Rico or Mexico.

(*Id.* at 3.) The Plan also defines the term "Dealer" as follows:

> "Dealer – means 'authorized FCA US LLC franchise dealer', which includes dealers of the Chrysler, Dodge, Jeep, Ram, SRT, FIAT and ALFA ROMEO vehicle lines."

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. (*See* ECF No. 30); Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] For purposes of this Rule 12(b)(6) Motion, the Court takes all of Plaintiff's well-pleaded allegations as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

[3] The Court disregards the Plan's original pagination and instead numbers the filed pages of Exhibit A to the Complaint sequentially, starting with the cover letter as Page 1.

(*Id.* at 2.)

Sometime in 2019, Bakhtiar contacted SaMo Chrysler regarding three issues with his 2015 Viper. (TAC ¶ 11.) SaMo Chrysler told Bakhtiar it "would not honor the . . . Plan because [it] would not receive any compensation for the work from FCA, and even if [it] wanted to, [SaMo Chrysler] could not do the service because it did not have 'Certified Viper Techs' that could work on repairs." (*Id.*) Bakhtiar then "spent numerous hours speaking with [SaMo Chrysler] as well as making inquiries to other Dodge dealerships to locate a 'Certified Viper Dealer' and/or 'Viper Techs' in the greater Los Angeles area." (*Id.* ¶ 13.) "Because FCA imposed a requirement that only Certified Viper Techs could service Plaintiff's vehicle and did not require its FCA Dealers to employ the services of Certified Viper Techs to honor the terms of the Service Contract, the repairs to Plaintiff's vehicle were never made . . . ." (*Id.* ¶ 16.) The approximate cost of all necessary repairs is $3,100, (*see id.*), and Bakhtiar alleges he has been harmed in this amount due to SaMo Chrysler's refusal to service the vehicle, (*id.* ¶ 17). In the alternative, Bakhtiar alleges his damages are the $2,600 he paid for the Plan. (*Id.*)

Based on these allegations, Bakhtiar proposes a class action with a plaintiff class consisting of all those who purchased a Mopar Vehicle Protection Plan for a Dodge Viper from January 1, 2010, to the present. (TAC ¶ 19.) On behalf of himself and this class, Bakhtiar asserts four causes of action against FCA and the other Defendants for: (1) breach of contract, (2) breach of express warranty under the Song-Beverly Consumer Warranty Act, (3) violation of California's Unfair Competition Law, California Business & Professions Code sections 17200–17210, and (4) violation of the Consumer Legal Remedies Act, California Civil Code sections 1750–1784.

The Court dismissed SaMo Chrysler from the action with prejudice pursuant to its unopposed motion to dismiss. (Min. Order, ECF No. 32.) Upon FCA's motion, the Court dismissed the Second Amended Complaint ("SAC"), dismissing Bakhtiar's

tort causes of action without leave to amend and granting leave to amend the others. (Order Granting Mot. Dismiss SAC ("Dismissal Order"), ECF No. 34.) Bakhtiar thereafter filed the operative TAC. Most recently, the Court dismissed Mopar Motors pursuant to Federal Rule of Civil Procedure ("Rule") 4(m), leaving FCA as the sole Defendant. (Min. Order, ECF No. 57.)

FCA now moves to dismiss each claim in the TAC under Rule 12(b)(6). FCA also moves to dismiss all nationwide class allegations on the grounds that Bakhtiar included the nationwide class in error and that the proposed class is intended to be limited to California residents.

### III.  LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements" of Rule 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be

sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. DISCUSSION

The Court addresses Bakhtiar's four claims in turn.

### A. Breach of Contract

FCA moves to dismiss Bakhtiar's first claim for breach of contract. A breach of contract claim consists of "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). FCA contends, as before, that Bakhtiar's breach of contract claim fails because he alleges neither breach nor damages. (Mot. 4–6.)

Preliminary, the TAC satisfactorily addresses certain deficiencies the Court previously described in dismissing the breach of contract claim from the SAC. The Court previously noted that, in the SAC, Bakhtiar had "merely allege[d] that he contacted SaMo Chrysler sometime in 2019 'regarding certain complaints he had concerning his 2015 Viper.'" (Dismissal Order 7 (quoting SAC ¶ 13).) This was insufficient to state a claim because Bakhtiar failed to allege facts showing "for instance, that the repairs he sought should have been covered under the Plan." (*Id.*) Bakhtiar has cured this deficiency by alleging the specific repairs he sought and that those repairs would be covered under the Plan. (*See* TAC ¶ 16.)

#### 1. Breach

No one disputes that Bakhtiar and FCA are the contracting parties, and the Plan confirms that Bakhtiar purchased the contract and that FCA LLC is "the entity obligated to perform the obligations of [the] contract." (Plan 1–2.) It is less clear whether the damages were caused by FCA's actions, that is, whether FCA committed

a breach. The TAC indicates that it was SaMo Chrysler that did not honor the Plan when asked. (TAC ¶ 11.) FCA's role in this failure is not so clear. SaMo Chrysler and FCA are not the same entity, and SaMo Chrysler's refusal to service the vehicle does not necessarily imply a breach on FCA's part.

With regard to FCA's role, Bakhtiar alleges that he ultimately contacted FCA's customer assistance department, which "failed to resolve Plaintiff's concerns." (TAC ¶ 15.) This allegation, taken along with the remaining allegations regarding FCA's promises and the general characteristics of the manufacturer-authorized dealer relationship, is sufficient to plausibly implicate FCA in the breach.

*2. Damages*

The next issue is that of damages, an issue "briefly note[d]" by the Court in its prior order. (Dismissal Order 7.) "For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. "Breach of contract actions seeking recovery of damages are focused on placing plaintiffs in the same position they would have been in had defendants performed their contractual obligations." *Ehret v. Uber Techs. Inc.*, 68 F. Supp. 3d 1121, 1141 (N.D. Cal. 2014). At the same time, "to be actionable, harm must constitute something more than nominal damages, speculative harm, or the threat of future harm . . . not yet realized." *Buttram v. Owens-Corning Fiberglas Corp.*, 16 Cal. 4th 520, 531 n.4 (1997).

The damages issue in this case turns on the interpretation of the written terms of the Plan. Dismissal pursuant to Rule 12(b)(6) is inappropriate when a contract is susceptible to multiple reasonable interpretations, one or more of which favors the plaintiff. *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008). In dismissing the breach of contract claim from the SAC, the Court examined the Plan and concluded that, by way of the Plan, FCA "promised

Bakhtiar he could obtain servicing of his vehicle, for any repairs covered under the Plan, from any authorized FCA dealership in the countries listed." (Dismissal Order 6.) This finding was, of course, limited to the allegations and the context of the now-inoperative SAC. For the purpose of the TAC and the present Motion, the Court goes this far and no further: there is a reasonable reading of the Plan under which FCA promised Bakhtiar he would be able to receive service at any authorized FCA dealership in the countries listed.

Thus, the Plan may be reasonably read as requiring FCA to ensure all its authorized repair facilities had a way of accepting covered vehicles for repair. Under this reading, FCA breached the Plan by failing to ensure that the vehicle was accepted for repairs at SaMo Chrysler, either by ensuring that a Certified Viper Tech was available or through other courses of action. As a result of this breach, and as alleged, Bakhtiar is currently in possession of a vehicle with a fuel economy issue, a defective gas cap latch, and a failing passenger-side power window. (TAC ¶ 11.) Under Bakhtiar's theory as alleged, had FCA performed on the contract as required, he would currently have a vehicle that does not have these issues. Moreover, it is a natural, plausible assumption that the presence of these issues decreases the value of Bakhtiar's vehicle by some dollar amount. This dollar amount—the difference between the value of the vehicle had the repairs been performed versus had they not been performed—is Bakhtiar's measure of contract damages. This amount is plausibly greater than zero, which is to say that Bakhtiar has sufficiently alleged damages.

To the extent FCA argues or suggests that Bakhtiar could have avoided damages with reasonable effort or expenditure by taking the vehicle to a different authorized dealer who may have had a Certified Viper Technician, (Mot. 6), this is an issue for later in the proceedings, after development of an evidentiary record. *See McKinzy v. Nat'l R.R. Passenger Corp.*, 836 F. Supp. 2d 1014, 1025 (N.D. Cal. 2011) ("Under the avoidable consequences doctrine as recognized in California, a person

injured by another's wrongful conduct will not be compensated for damages that the injured person could have avoided by reasonable effort or expenditure." (citing *State Dept. of Health Servs. v. Superior Court*, 31 Cal. 4th 1026, 1043 (2003))).

Bakhtiar plausibly alleges that FCA breached the Plan's terms, and the Motion is accordingly **DENIED** as to the breach of contract claim.

### B. Breach of Express Warranty under Song-Beverly Consumer Warranty Act

FCA moves to dismiss Bakhtiar's second claim for breach of express warranty under California's Song-Beverly Act. The Song-Beverly Act provides in relevant part that "[a]ny buyer of consumer goods who is damaged by a failure to comply with any obligation under . . . [a] service contract" may bring suit. Cal. Civ. Code § 1794(a).

In *Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246 (2004), a consumer had purchased a new vehicle from the defendant manufacturer along with a separate service contract from the manufacturer. A defect manifested in the vehicle after the original manufacturer warranty expired but while the vehicle was still under the service contract. The consumer asserted a Song-Beverly claim based on the service contract alone, and the trial court awarded vehicle replacement/restitution damages under the Song-Beverly Act. 32 Cal. 4th at 1250. The Supreme Court reversed the replacement/restitution award, observing that the text of the Song-Beverly Act made a systematic distinction between express warranties and service contracts. Under *Gavaldon*, as long as a manufacturer has not used the terms "warrant" or "guarantee" in a service contract, "the breach of its service contract does not make it subject to the replacement/restitution remedy reserved in [Civil Code] section 1793.2, subdivision (d) for purchasers of motor vehicles sold with 'express warranties." *Gavaldon*, 32 Cal. 4th at 1259.

Here, the Plan is very specific about its being a service contract. Bakhtiar purchased the Plan separately from the purchase of the Vehicle itself. (TAC ¶ 8.) The Plan document states that the Plan is a service contract, and expressly states that it "is not insurance and is not part of the manufacturer's warranty." (Plan 2.) The Plan

8

clearly and unambiguously indicates that FCA disclaimed any warranty or guarantee in extending the Plan to Bakhtiar. Thus, under *Gavaldon*, Bakhtiar cannot obtain replacement or restitution under Song-Beverly. Accordingly, the Court **GRANTS** FCA's Motion **IN PART** and **DISMISSES** the Song-Beverly Act claim to the extent it is predicated on replacement or restitution under the Song-Beverly Act.

Even after this partial dismissal of the contract claim, however, compensatory and other damages are still available. *Kwan v. Mercedes-Benz of N. Am.*, 44 Cal. App. 4th 750, 755 (1996) ("The clear mandate of [Civil Code] section 1794 . . . is that the compensatory damages recoverable for breach of the [Song-Beverly] Act are those available to a buyer for a seller's breach of a sales contract."). When, as here, the buyer has accepted the goods, these damages "include the cost of repairs necessary to make the goods conform." Cal. Civ. Code § 1794(b)(2). Also included are other categories of compensatory, incidental, and consequential damages. *See* Cal. Comm. Code §§ 2714–2715.

Without the replacement/restitution remedy, the remedies available for the alleged Song-Beverly Act violation are largely duplicative of those available for breach of contract. But the Song-Beverly Act provides additional remedies a state-law breach of contract claim does not, such as attorneys' fees, making dismissal at this stage inappropriate. Cal. Civ. Code § 1792(d). Accordingly, the Motion is **DENIED** as to the third claim inasmuch as Bakhtiar seeks damages other than the Song-Beverly Act's replacement/restitution remedy.

**C.    UCL**

California's Unfair Competition Law ("UCL"), codified at Business and Professions Code section 17200–17210, prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *see Clark v. Superior Court*, 50 Cal. 4th 605, 610 (2010). The Court previously dismissed Bakhtiar's UCL claim on the overlapping grounds of damages and standing. (Dismissal Order 9.) For the reasons discussed above, Bakhtiar has sufficiently alleged damages in the form of

diminution to the value of his vehicle resulting from FCA's failure to ensure the vehicle could be repaired at authorized service centers. The remaining issues are (1) UCL standing and (2) whether Bakhtiar has alleged unfair, unlawful, or fraudulent practices on FCA's part.

### 1. UCL Standing

Pursuant to Business and Professions Code section 17204, a private party bringing suit for unfair business practices under the UCL must have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1228 (C.D. Cal. 2011). "There are innumerable ways in which economic injury from unfair competition may be shown," including "surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have" and "hav[ing] a present or future property interest diminished." *Kwikset*, 51 Cal. 4th at 323.

Here, Bakhtiar has sufficiently alleged that, in purchasing the Plan, he surrendered more or acquired less than he otherwise would have. Bakhtiar paid a certain amount for the Plan, and there is a reasonable reading of the Plan under which Bakhtiar did not receive all the benefits he was promised. Thus, Bakhtiar received a Plan that was less valuable than the Plan he was promised. The difference between the value of the Plan as promised and the value of the Plan as received is Bakhtiar's "lost money," which gives him standing under the UCL. Cal. Bus. & Prof. Code § 17204.

In the alternative, Bakhtiar sufficiently alleged that a present property interest was diminished. His vehicle currently has issues which it would not have if FCA had ensured its dealerships were able to accept his Viper for repairs as promised. As a result, his vehicle's value is lower than it otherwise would be, a form of diminished property interest.

Accordingly, Bakhtiar's allegations are sufficient to establish standing under the UCL.

### 2. "Unfair" prong

Aside from standing, Bakhtiar has pled, at minimum, a UCL claim under the "unfair" prong. Courts' decisions since the adoption of the current form of the UCL in 1972 have repeatedly affirmed that the UCL covers a wide variety of wrongful business conduct. *See, e.g.*, *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151–52 (9th Cir. 2008). Remarking on the statutory predecessor to the UCL, the California Supreme Court observed that the Legislature intended by its "sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur." *Barquis v. Merch. Collection Ass'n*, 7 Cal. 3d 94, 111 (1972); *id.* at 112 (observing UCL enables courts to redress the "innumerable 'new schemes which the fertility of man's invention would contrive'" (quoting *Am. Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 698 (1935))).

Given this standard, Bakhtiar has plausibly alleged that FCA engaged in unfair behavior by inducing him into a service contract that (under one reasonable reading) promised repairs at any authorized dealer, and then later failing to deliver on that promise. For FCA to accept a fee from consumers and not provide them with the services promised is "unfair" behavior—both to the consumers who are harmed by the practice and to other competing manufacturers and service providers who provide vehicle owners with the full set of benefits promised by their service contracts. The Court need go no further at this stage and **DENIES** FCA's Motion as to the UCL claim.

### D. CLRA

FCA moves to dismiss Bakhtiar's fourth claim for violation of the California Consumers Legal Remedies Act ("CLRA"). The CLRA "declares unlawful a variety of unfair methods of competition and unfair or deceptive acts or practices used in the sale or lease of goods or services to a consumer." *Bower v. AT&T Mobility, LLC*,

196 Cal. App. 4th 1545, 1556 (2011) (internal quotation marks omitted); Cal. Civ. Code §§ 1750–1784.

Under the CLRA, to sue for money damages, a plaintiff must first provide the defendant with notice and a 30-day opportunity to cure the issue. Cal. Civ. Code § 1782(a). This is a substantive requirement, not a procedural one, and it applies in federal court. *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 928–29 (N.D. Cal. 2018). As the TAC does not indicate the Bakhtiar gave such notice, the relief Plaintiff may seek under the CLRA is limited to injunctive relief alone. *See* Cal. Civ. Code § 1782(d). Bakhtiar seeks an injunction under the CLRA, (TAC ¶ 57), which is sufficient to avoid dismissal of the claim. However, the Court **GRANTS** the Motion **IN PART** by **DISMISSING** the CLRA claim to the extent it is predicated on any remedy but an injunction.

Bakhtiar seeks relief under the CLRA pursuant to two specific categories of prohibited conduct: advertising goods or services with intent not to sell them as advertised, Cal. Civ. Code § 1770(a)(9), and representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, *id.* § 1770(a)(14). At minimum, Bakhtiar sufficiently alleges a CLRA claim under the latter. There is a reasonable reading of the Plan under which FCA, by way of the written terms of the Plan, represented to Bakhtiar that he could present his vehicle to any authorized service center for covered repairs. As alleged, FCA failed to ensure that SaMo Chrysler took in the vehicle for the requested repairs. In other words, as alleged, FCA's failure deprived Bakhtiar of a right FCA promised Bakhtiar's purchase would provide him. The allegations therefore plausibly support a CLRA violation, and the Court **DENIES** the Motion as to the portion of Bakhtiar's CLRA claim seeking injunctive relief.

Bakhtiar avoids dismissal of this claim because his allegations of a section 1770(a)(14) violation are well pleaded. Thus, the Court need not determine at this time whether Bakhtiar has also stated a CLRA claim under section 1770(a)(9).

### E. Claims by Nationwide Class

Finally, in the moving papers, FCA represents that Bakhtiar erroneously included nationwide class allegations in the TAC, and that Bakhtiar has conceded that the class in this matter is limited to California residents. (Mot. 13.) This representation comports with the TAC, and Bakhtiar failed to address it in any way in his Opposition. Accordingly, the Court **DISMISSES** the TAC **without leave to amend and without prejudice** to the extent its allegations are made on behalf of a nationwide class.

### V. CONCLUSION

FCA's Motion is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 53.) Bakhtiar's Song-Beverly Act claim is **DISMISSED without leave to amend** to the extent it is predicated on replacement or restitution under the Song-Beverly Act. Bakhtiar's CLRA claim is **DISMISSED with leave to amend** to the extent it is predicated on any remedy other than an injunction. The entire TAC is **DISMISSED without leave to amend and without prejudice** to the extent its allegations are made on behalf of a nationwide class. The Motion is otherwise **DENIED**.

The leave granted by the Court as to the CLRA claim is narrow; Bakhtiar either did or did not provide pre-suit notice before asserting his CLRA claim. Accordingly, Bakhtiar must file a Fourth Amended Complaint, if any, within **seven (7) days** of the date of this Order. The only change permitted is to add allegations regarding pre-suit notice under the CLRA.

///
///
///
///
///
///
///

If Bakhtiar timely files an amended complaint, FCA must file its response in accordance with Rule 15(a)(3). If Bakhtiar does not timely amend, then FCA shall file its Answer within **fourteen (14) days** of the date the Fourth Amended Complaint would have been due.

**IT IS SO ORDERED.**

October 13, 2021

_____
         **OTIS D. WRIGHT, II
         UNITED STATES DISTRICT JUDGE**